**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF TEXAS**

US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2022 JAN 20  PM 4: 03

DEPUTY CLERK_____ **mb**

Joe Hunsinger
  Plaintiff Pro-Se'

Case No:

V.

ALLIED UNIVERSAL SECURITY SERVICES, LLC.
G4S SECURE SOLUTIONS (USA), INC.
  Defendants

**3-22CV0134-L**

# COMPLAINT

## <u>1.0  PARTIES</u>

1.1   Joe Hunsinger is a an individual citizen of Texas and a resident of this District.

1.2   Defendant ALLIED UNIVERSAL SECURITY SERVICES, LLC. (Allied) is a foreign corporation with its principal place of business in the State of Pennslyvania. Montgomory County.

1.3   Defendant Allied can be served by their address of 8 Tower Bridge, 161 Washington Street, #600, Conshohocken, Pennslyvania 19428.

1.4   Defendant G4S SECURE SOLUTIONS (USA), INC. (G4S) is a foreign corporation with its principal place of business in the State of Florida.  Leon County

1.5   Defendant G4S can be served by their registered agent Corporation Service Company, 1201 Hays Street, Talahassee, Florida 32301.

1.6   Or Defendant G$S can be served at their address of 1395 University Blvd., Jupiter, Florida 33458.

## 2.0 JURISDICTION AND VENUE

2.1    This court has personal specific jurisdiction pursuant to 28 USC Section 1331 and 47 USC Section 227.

2.2    Supplemental jurisdiction for Plaintiffs state law claims arise under 28 USC Section 1391(b)(2).

2.3    This Court has personal specific jurisdiction over Defendant because defendant made calls to Plaintiff in this District and Defendant conducts business in the State of Texas.

## 3.0  PRELIMINARY STATEMENT

3.1    This is an action for damages brought by an individual consumer for violations of the TCPA, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive and nuisance telemarketing practices.

3.2    Senator Hollings, the TCPA's sponsor, described these call as "the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of be; they hound us until we want to rip the telephone out of the wall."  Defendant's actions has caused Plaintiff to suffer physical sickness.

3.3    According to findings by the FCC, the agency congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls.

3.4    The national DNC registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.  Plaintiff hereby requests a copy of Defendants DNC Policy.

3.5   The TCPA regulations define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services."

3.6   Telemarketing occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services.

3.7   Neither the TCPA nor its implementing regulations require an explicit mention of a good, product, or service – where the implication of an improper purpose is "clear from the context."

3.8   In other words, "offers that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA.

3.9   If a call is not deemed telemarketing, a Defendant must nevertheless demonstrate that it obtained the Plaintiffs prior express consent according to 47 CFR Section 64.1200(a)(1).

3.10  The FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages.

3.11  "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients."

3.12  Plaintiff has been harmed by Defendants' acts because his privacy has been violated.  Plaintiff was subject to annoying and harassing telephone calls (texts) that constitute a nuisance.

3.13  Telemarketers must obey the prohibitions in the TCPA.

3.14 Telemarketing is defined as "a plan, program, or campaign which is conducted to induce the purchase of goods or services or charitable contribution by use of one or more telephones and which involves more than on interstate telephone call.

3.15 Plaintiff establishes injury in fact, if he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."

3.16 Plaintiff has the precise harm and infringe the same privacy interests Congress sought to protect in enacting the TCPA.

3.17 Plaintiffs "express consent" is not an element of Plaintiffs prima facie case, but is an affirmative defense for which the Defendant bears the burden of proof.

3.18 One single unsolicited marketing text or call is all it takes for a Plaintiff to have standing and bring suit against a violator of the TCPA.

3.19 The TCPA does not bar all business-related text messaging, but instead, focuses, in part, on cellular calls and text messages that are for the purpose of soliciting new or additional business.

3.20 Defendants actions are a pattern and practice over time.

3.21 Defendants, in its alleged violation, was aware of the conduct and allowed it to continue.

3.22 The impersonal and generic nature of Defendants text message(s), demonstrate that Defendant utilized an ATDS in transmitting the message.

3.23 Text message advertisements and the use of a short code, support an inference that the text messages use ATDS.

3.24 Plaintiff has alleged facts sufficient to infer text messages were sent using ATDS – use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS.

3.25 Defendant used a "long code" to transmit a text to the Plaintiff. A long code is a standard 10-digit phone number that enabled Defendant to send SMS text messages *en masse*, while deceiving recipients into believing that the message was personalized. Defendant can copy and past and send hundreds of characters out with a few clicks.

3.26 Long codes work as follows: Private companies known as SMS gateway providers have contractual arrangements with mobile carriers to transmit two-way SMS traffic. These SMS gateway providers send and receive SMS traffic to an from the mobile phone networks SMS centers which are responsible for relaying those messages to the intended mobile phone. This allows for the transmission of a large number of SMS messages to and from a long code.

3.27 Specifically, upon information and belief, Defendant utilized a combination of hardware and software systems to send the text messages at issue in this case. The systems utilized by Defendant have the capacity of store telephone numbers and to dial such number from a list.

3.28 Defendants unsolicited calls/text message(s) caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendants text messages also inconvenienced Plaintiff and caused disruption of his daily life.

3.29 Unwanted "Robocalls" are the number one complaint in America today. Americans received over 47 billion robocalls just year.

3.30 Plaintiff estimates he has received tens of thousands of unauthorized and unwanted text messages and calls in his lifetime from telemarketers. Some have been from repeat violators and some have been from single call/text violators. The Bureau of Labor Statistics tells us there are 134,800 telemarketers in the USA.

If this information is correct American consumers could quite possibly receive 369.31 calls per day and we have to tell the telemarketers is to place us on their do not call list and we won't hear from them in another 12 months, and then process begins all over again?  Plaintiff does not want to have his phone ring or text 369.31 times a day from telemarketers.  Plaintiff does not even want one telemarketer to call him.  There is a reason they say we as a nation may disagree on many issues, but when it comes to unwanted telemarketing (Robocalls/texts) we all agree that we do not like them.

3.31  The contempt from Senator Hollings was he even wanted to do away with all telemarketers, period.  Plaintiffs pleading as mentioned above are clear and give an insight on where Plaintiff set of mind.  How he wants to left alone and unbothered by telemarketing calls/texts.

3.32  The Do Not Call provisions of the TCPA cover any plan, program or campaign to sell goods or services through interstate phone calls. This includes calls by telemarketers who solicit consumers, often on behalf of third party sellers.

3.33  The TCPA has a "safe harbor" for inadvertent mistakes.  If a telemarketer can show that, as part of its routine business practice, it meets all the requirements of the safe harbor, it will not be subject to civil penalties or sanctions for mistakenly calling a consumer who has asked for no more calls, or for calling a person on the registry.

3.34  Defendants are telemarketers defined by the TCPA.

3.35   Defendants do not have a "safe harbor" as defined by the TCPA for inadvertent mistakes, because they did not send a copy of their DNC Policy to the Plaintiff when he requested it.

3.36 Plaintiffs complaint seeks money damages and injunctive relief from Defendants illegal conduct.

3.37 This private cause of action is a straight forward provision designed to achieve a straightforward result.  Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights.  Violations of the law are clear, as is the remedy.

3.38 Plaintiffs Complaint notifies the Defendant of the claim against it and the sufficiency of the facts provided.

3.39 The TCPA was enacted to prevent companies like Defendant from invading Plaintiffs' privacy as explained in paragraph 3.28 and 3.29.

3.40 Defendant uses telemarketing to obtain new customers.

3.41 Plaintiff, over 31 days ago, has registered his phone number with the DNC Registry, see 47 CFR Section 64.1200(b)-(d).

3.42 The court must accept as true all well-pleaded facts in the complaint, and the complaint is to be liberally construed in favor of the plaintiff.  Plaintiff has provided exhibits of his phone being registered on the DNC Registry, Screenshots of the calls/texts from Defendant or their agents, and other information about the Defendant.

3.43 Defendants conduct business in the State of Texas.

3.44 Defendants must obey the laws of Texas.

3.45 Defendants violate the laws of Texas.

3.46 Defendants know the laws of the TCPA.

3.47 Defendants willfully violated the laws of the TCPA.

3.48  Plaintiffs Complaint adequately identifies the acts and events that entitle him to relief and are not threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.

3.49  Defendant uses third party vendors to initiate calls on their behalf.

3.50  Defendant also uses employees to initiate calls on its behalf.

3.51  Plaintiffs description of an event that happened which created a right of action under the TCPA and exhibits provided are factual support, sufficient for Plaintiff to state a claim.

3.52  Plaintiff wants to use our nations telecommunications infrastructure without harassment.

3.53  Defendant uses more than one phone numbers in is business.

3.54  If Defendant(s) want to avoid a TCPA lawsuit, all they have to do is not break the laws in the TCPA.

3.55  Plaintiff has not purchased or inquired about Defendants goods or services.

3.56  Any person or individual may be held personally or individually liable for violatins of the TCPA if – They had direct personal perticipation in the conduct found to have violated the TCPA – or – Personally authorized the conduct found to have violated the TCPA.

## 4.0  VICARIOUS LIABILITY

4.1   At all times relevant the the events giving rise to this lawsuit, Defendant acted through its agents and is therefore liable for such actions pursuant of vicarious liability principles.

4.2    Whenever it is stated herein that Defendant engaged in any act or omission, the statement includes the acts or omissions by Defendant, its agents, its employees, its representatives and others with actual or apparent authority to act on behalf of and bind the Defendant.

4.3    Under the TCPA corporate offers can be held liable under the laws of the TCPA.

## 5.0  QUESTIONS OF LAW

5.1    There are well defined and nearly identical questions of law and fact that affect all parties.  Such common questions of law and fact include, but are not limited to, the following:

5.2    Whether Defendant(s) placed such telephone calls to the Plaintiff;

5.3    Whether Defendant(s) TCPA violations and conduct was knowing and/or willful:

5.4    Whether Defendant(s) can meet their burden of showing that they clearly and unmistakably obtained "prior express consent" to make such calls/texts to the Plaintiff;

5.5    Whether Defendant(s) are liable for damages to the Plaintiff, as well as the amount to of such damages;

5.6    Whether Defendant(s) identified themselves to the Plaintiff or if their agents identified the entity on whose behalf the call/text was being made;

5.7    Whether Defendant(s) sent Plaintiff their DNC policy when it was requested;
5.8    Whether Defendant(s) uses telemarketing to obtain new customers;

5.9    Whether Defendant(s) have a written DNC policy;

5.10   Whether Defendant(s) written DNC policy was shared with anyone
       "on demand.";

5.11   Whether Defendant(s) can prove they trained their employees about
       the telemarketing rules and laws set in place;

5.12   Whether Defendant(s) have maintained a list of persons that they may
       not contact;

5.13   Whether Defendant(s) have a process in place to prevent phone calls
       to either numbers on the National Do Not Call List or numbers on the
       telemarketers internal do not call list;

5.14   Whether Defendant(s) have a process in place to monitor calls to
       prevent violations of the do not call list;

5.15   Whether Defendant(s) have maintained an errant list of all call that
       violate the do not call regulations;

5.16   Whether Defendant(s) can prove they used TCPA compliant vendors;

5.17   Whether Plaintiff opted out of receiving calls/texts from Defendant.

5.18   Whether Defendant(s) honored Plaintiffs opt out/stop request.

5.19   Whether Defendant(s) had reason to know, or should have known that
       its conduct would violate the statute.

5.20   Whether Plaintiff is entitled to injunctive relief;

5.21   Whether Defendant(s) should be enjoined from engaging in such
       mentioned conduct in the future;

5.22   Common questions in this case have common answers.

## 6.0  FACTUAL ALLEGATIONS AGAINST
## ALLIED UNIVERSAL SECURITY SERVICES, LLC.
## and G4S SECURE SOLUTIONS (USA), INC.

6.1   On Saturday 9-3-2021 at 4:00 PM Plaintiff received **one** unauthorized and unwanted telemarketing text message to his cell phone ending in **2367** from Defendant or their agent form phone number / long code 214-319-8982.  The

6.2   The sender only identified themselves as G4S with a website of careers.g4s.com.

6.3   Plaintiff clicked on their link and it took them to Defendant G4S website.

6.4   Plaintiff went to G4S website and it directed him to Defendant Allied's website.

6.5   After Plaintiff obtained the Defendants true identities, Plaintiff sent both Defendants a certified letter, dated 10-11-2021,  requesting a copy of their DNC Policy.

6.6    Plaintiff did not receive a response about his DNC Policy request from either Defendant.

6.7   laintiff is informed and believes and therefore alleges that texts that Defendant placed to him were made using an automatic telephone dialing system that has the capacity to store numbers and dial them.

6.8   The text message Plaintiff reveived from Defendants was plaine and general offering to hire security officers.  G4S is wholly operated subsidaries of Allied and it is believed Allied has direction and control over the joint marketing campaigns of its wholly owned subsidariy.

6.9   A telemarketer must provide their name, and the corporate name or registered name of the organization (to the consumer) that they are contacting consumers on behalf of.  Defendant G4S failed to do this.

6.10 Defendant did not properly identify themselves to Plaintiff as required in CFR 64.1200(d)(4).

6.11 Defendant and/or their agents failed to properly identify themselves as required by the TCPA when the caller or sender of the text did not identify themselves and did not identify the name of the person or entity the call was being made on behalf of.

6.12  Defendants do not have established precedures, do not implement and enforce written DNC lists or internal DNC lists.  Defendants failed to meet the following standards that would exempt them from liability from the TCPA.

6.13 Defendant used an automatic telephone dialing system as defined by 47 USC Section 227(a)(1) to place calls/texts to Plaintiff.

## 7.0  FACTUAL ALLEGATIONS
## CONTINUED

7.01   Plaintiff, searching on the Texas Secretary of State's website found Defendant G4S to be registered as a foreign INC. In the State of Florida.  Allied is a be registered as a foreign LLC, from Pennsylvania.

7.02  Plaintiff searched Defendant on Pacer [and also paid their fees to search and look at pleadings] and found hundreds of other complaints against the Defendants for firing a pregnant woman and firing employees because they missed work when they got sick from Covid.  Plaintiff kept clicking and paying Pacers fees to find another suit similar to his but stopped after racking up a bunch of search fees.   Again, hundreds of lawsuits.  Nasty stuff, poor people.

7.03  Plaintiff, at no time, gave Defendant his "prior express consent" or "express consent" to be contacted by text messages.

7.04  Part of Plaintiffs discovery will will be finding out if Defendant has a company wide pattern or practice of engaging in the alleged illegal practices at issue in my case.  Plaintiff is proffering that a number of similar incidents have occurred around the country to other everyday people.

7.05  In this alleged action, it is the Plaintiffs belief the Defendant uses long codes to run his telemarketing campaign to text people from a phone number.

7.06  The calls and texts placed by the Defendant was not necessitated by an emergency purposes as defined by 47 USC Section 227(b)(1)(A).

7.07  Defendants commercial telemarketing texts were transmitted to Plaintiffs cellular telephone, and within the time frame relevant to this action.

7.08  Defendant initiated or caused to initiate illegal texts to Plaintiff.

7.09  Plaintiff is not a customer of Defendant and has not provided defendant with his personal information or telephone number, or sought out solicitation from the Defendant or their agents.

7.10  It is Defendants burden to prove they has "express consent" per the TCPA to call the Plaintiff on his cell phone using an "automatic telephone dialing system."

7.11  At no time did Plaintiff provide prior express written consent, or even prior permission, for the Defendant or their agents to call the Plaintiff.

7.12  Plaintiff does not have and has never had an established business or personal relationship with the Defendants.

7.13 The text received by the Plaintiff from the Defendant or their agent was for the purpose of encouraging the purchase of rental of, or investment in, property, goods, or services. The call therefor qualifies as telemarketing.

7.14 Plaintiff is the subscriber of phone number ending in **2367** and is financially responsible for phone service to said number.

7.15 Plaintiff's phone number ending in **2367** is primarily used for personal, family, and household use.

7.16 Upon information and belief, Defendants texts harmed the Plaintiff by causing the the very harm that Congress sought prevent – that is the "nuisance and invasion of privacy" and a Plaintiff suffered a concrete and particularized harm.

7.17 Upon information and belief, Defendants texts harmed Plaintiff by intruding upon Plaintiffs seclusion, lost time attending to unsolicited, unwanted and unauthorized calls, decreased phone battery life, need for more frequent re-charging of the battery, annoyance, and frustration.

7.18 The FCC has instruct that sellers such as Defendants may not avoid Liability by outsourcing telemarketing:

[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law

enforcement agencies) would be required to sue each marketer separarately in order to obtain effective relief.  As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumers privacy."

May 2013 FCC Ruling. 28 FCC Red at 6588(Paragraph 37) (internal citations omitted).

7.19  In its January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations.  id. (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 USC Section 227(b).

7.20  The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."  See in re Rules & Regulations Implementing the TCPA, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Red 12391, 12397 (Paragraph 13)(1995).

7.21  does not access the national Do-Not-Call database.  Defendant cannot demonstrate their violations are in error, does not have written procedures to comply with the Do-Not-Call rules, and does not train its personnel in compliance and procedures pursuant the Do-Not-call rules.

7.22  On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contacts out is telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of ...section 227(b) that are committed by third-party telemarketers"  See In re Joint Petition filed by Dish Network, LLC., et al, for Declaratory Ruling Concerning the TCPA Rules, CG Docket No. 11-50, Declaratory Ruling, 28 FCC Red 6574, 6574 (paragraph 1)(May 9, 2013)("May 2013 FCC Ruling").

7.23 More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has aparent (if not actual) authority" to make the calls. 28 FCC Red at 6586 (paragraph 34)

7.24 Defendant is not a tax-exempt non profit organization.

7.25 The FCC has repeatedly rejected a narrow view of the TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing cal, id at 6587 n. 107.

7.26 The may 2013 Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

[A]pparent authority may be supported by evidence that the seller alows the outside sales entity access to information and systems that normally would be within the Sellers's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer system, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer ti cease that conduct.

28 FCC Red at 6592 (paragraph 46).

7.27 Defendants were legally responsible for ensuring that their vendors complied with the TCPA, even if Defendants did not themselves make the calls.

7.28  Defendant were legally responsible for ensuring that their vendors complied with the TCPA, even if Defendants did not themselves make the calls.

7.29 Defendants knew (or reasonably should have known( that their vendors were violating the TCPA on their behalf, and failed to take effective steps within their power to force the telemarketer to cease that conduct.

7.30  Defendants calls were transmitted to Plaintiffs cellular telephone, and within the time frame relevant to this action.

7.31 Upon information and belief, Defendants calls harmed the Plaintiff by causing the the very harm that Congress sought prevent – that is the "nuisance and invasion of privacy" and a Plaintiff suffered a concrete and particularized harm.

7.32  Upon information and belief, Defendants calls harmed Plaintiff by intruding upon Plaintiffs seclusion.

7.33 As a result of Defendant illegal conduct, Plaintiff is entitled to $500 in damages for each such violation of the TCPA.  This is for each and every violation, whether Defendants committed multiple violations with a single phone call.

7.34 As a result of Defendant illegal conduct, Plaintiff is entitled to $500 in damages for each such violation of the TCPA.  This is for each and every violation, whether Defendant committee multiple violations with a single text.  The number of texts are irrelevant.

## 8.0 STANDING

8.01  Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state: (a) a valid injury in fact; (b) which is traceable to the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial decision.

8.02  Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution.

8.03  For an injury to be "concrete" it must be a de facto injury, meaning that it actually exists. In Plaintiffs case, Defendant sent a text messages to Plaintiff's cellular telephone, using an ATDS. Such text messages are a nuisance, an invasion of privacy, and an expense to Plaintiff. All three of these injuries are concrete and de facto.

8.04  For an injury to be "particularized" means that the injury must "affect the Plaintiff in a personal and individual way." In Plaintiffs case, Defendant invaded Plaintiffs privacy and peace by texting his cellular telephone, and did this with the use of an ATDS.  Furthermore, Plaintiff was distracted and annoyed by having to take time, opening and reading the text message. All of these injuries are particularized and specific to Plaintiff.

8.05  Plaintiffs case passes The " Traceable to the Conduct of Defendant" Prong.

8.06 The second prong to establish standing at the pleadings phase is that Plaintiff must allege facts to show that its injuries are traceable to the conduct of Defendant. The above text message was directly and explicitly linked to Defendant.  The number from which the text was sent belongs to Defendant. This text message is the sole source of Plaintiff's and the Class's injuries. Therefore, Plaintiff has illustrated facts that show that her injuries are traceable to the conduct of Defendant.

8.07 Plaintiffs case passes the " Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong,

8.08 The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion In the present case, Plaintiff's Conclusion include a request for damages for each text message made by Defendant, as authorized by statute in  47 USC. Section 227. The statutory damages were set by Congress and specifically  redress the financial damages suffered by Plaintiff.

8.09  Plaintiff, under his 14 Amendment rights, has right to bring this action to be heard in front of a jury.

8.10  Because all standing requirements of Article III of the US Constitution have been met, Plaintiff has standing to sue Defendant on the stated claims.

## COUNT 1

11.01  Plaintiff re-alleges and incorporates the above paragraphs.

11.02   Defendant violated 47 USC Section 227(b)(1)(A)(iii) by placing **one**  (non emergency) solicitation calls/texts to the Plaintiff.

11.03 Defendant must pay Plaintiff $500 for each text placed to Plaintiff.

## COUNT 2

12.01 Plaintiff re-alleges and incorporates the above paragraphs.

12.02 Defendant transmitted **one** solicitation calls/texts to Plaintiffs cellular phone number, which was registered on the Do Not Call registry, violating 47 CFR Section 64.1200(c)(2) and CFR 64.1200(a)(1).

12.03  Defendant must pay Plaintiff $500 for each text placed to Plaintiff.

## COUNT 3

13.01  Plaintiff re-alleges and incorporates the above paragraphs.

13.02  Defendant knew or should have know that Plaintiff had not given his <u>prior express invitation or consent</u> to receive its texts messages violating CFR 64.1200(c)(2)(ii).

13.03   Defendant must pay Plaintiff $500.

## COUNT 4

14.01  Plaintiff re-alleges and incorporates the above paragraphs.

14.02  Defendant initiated calls/texts to the Plaintiff, despite the fact that Plaintiffs phone number <u>is listed on the DNC list</u>, and does not have polices and written procedures in place that must meet the standards of CFR 64.1200(d)(1)-(6).

14.03  Defendant must pay Plaintiff $500.

## COUNT 5

15.01 Plaintiff re-alleges and incorporates the above paragraphs.

15.02 Plaintiff has requested Defendants <u>Do-Not-Call Policy</u>, and has not received it. It is a violation of CFR 64.1200(d)(1).

15.03 Defendant must pay Plaintiff $500 for not providing their DNC Policy.

## COUNT 6

16.01 Plaintiff re-alleges and incorporates the above paragraphs.

16.02 Defendant made calls to Plaintiffs phone ending in **2367** intentionally or knowingly and the calls were not accidental.

16.03 Pursuant to TBCC Section 305.053, Plaintiff sues here for monetary damages.

16.04 Pursuant USC Section 227(c)(5) and 47 CFR Section 64.1200(a)(2), treble the $500 statutory damages to be recoverable by Plaintiff against the Defendant to $1500 for each transmitted text Defendant placed and for violating the the DNC request.

16.05 Defendant must pay Plaintiff $1500 for each violation and text transmitted to Plaintiff.

## COUNT 7

17.01 Plaintiff re-alleges and incorporates the above paragraphs.

17.02 Pursuant to 47 USC Section 227(b)(3)(A) and TBCC Section 305.053, the court following the trial of this action should issue an order permanently enjoining Defendant and its agents from engaging in any further conduct with respect to Plaintiff which violates the rules and regulations of 47 USC Section 227.

## COUNT 8

18.01 Plaintiff re-alleges and incorporates the above paragraphs.
18.02 Defendant intentionally intruded on Plaintiffs solitude, seclusion, and private affairs by transmitting unsolicited telemarketing calls to his cellular phone. Defendants intrusion would be highly offensive to a reasonable person.

18.03 The repeated autodialed calls to Plaintiffs cellular phone have caused him emotional harm and distress, frustration, aggravation, wasted time, a nuisance and other losses.   Defendant's actions has caused Plaintiff to suffer physical sickness.

18.04       Plaintiff seeks to recover punitive and actual damages, including his damages for mental anguish, to be proven at trial.  Mental anguish is one of the

torts for which Plaintiff can recover mental-anguish damages without proving physical injury.

## TRIAL BY JURY

20.01    Plaintiff demands a trial by jury under the 7th Amendment of the US Constitution.

## CONCLUSION

Plaintiff has read Dondi Properties Corp. v. Commerce Savs. & Loan Ass'n which pretty much establishes the conduct for attorneys and references abusive litigation tactics from attorneys conduct.   Plaintiff believes if Defendant would read Dondi and instruct their attorney to send copies of the filings and emails between the Plaintiff and Defendants attorney, this would keep the Defendants attorney from "poking a stick at Plaintiffs ribs" just to upset him and try to prolong the hours he will be charging his client.

Plaintiff requests a copy of Defendants Do-Not-Call Policy to be sent to Plaintiffs address below.

Plaintiff requests everything he has asked for in his Complaint and other relief as the Court deems necessary.

Joe Hunsinger – Pro se
7216 CF Hawn Frwy.
Dallas, Texas 75217
214-682-7677
joe75217@gmail.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF TEXAS

Joe Hunsinger
  Plaintiff Pro-Se'

Case No:

V.

ALLIED UNIVERSAL SECURITY SERVICES, LLC.
G4S SECURE SOLUTIONS (USA), INC.
  Defendants



# EXHIBITS

 **Gmail**

Joe Hunsinger <casa75217@gmail.com>

---

## National Do Not Call Registry - Your Registration Is Confirmed
1 message

---

**Verify@donotcall.gov** <Verify@donotcall.gov>
To: casa75217@gmail.com

Thu, Jul 29, 2021 at 8:57 AM

Thank you for registering your phone number with the National Do Not Call Registry. You successfully registered your phone number ending in 2367 on January 30, 2010. Most telemarketers will be required to stop calling you 31 days from your registration date.

Visit https://www.donotcall.gov to register another number or file a complaint against someone violating the Registry.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Please do not reply to this message as it is from an unattended mailbox. Any replies to this email will not be responded to or forwarded. This service is used for outgoing emails only and cannot respond to inquiries.

1:00

**(214) 319-8982**
Dallas, TX



9/3/21, 4:00PM

Happy Friday! G4S is hiring for **secu**rity officers in your area! Please visit careers.g4s.com to learn more and apply now

**+** Send message



  

9:02   5G 69%

 careers.g4s.com  ⋮

 **United State** 

Search by keyword    Search by zip/postcode/cit    🔍



OUR EMPLOYER

# G4S CAREERS

Search by keyword

Search by zip/postcode/city   🇺🇸 ▼

## WELCOME TO THE NEW G4S JOB BOARD

You can search our site for all our G4S vaca as well as information about job roles at G4

**LATEST**

Security Of





# REDIRECTING TO ALLIED UNIVERS...

You have landed on the G4S Limited site. Would you like to be redirected to AUS.com?

As of October 8th G4S USA has become part of Allied Universal READ MORE

REDIRECT ME TO G4S USA

CONTINUE BROWSING CORPORATE PLC

ACCEPT

We use cookies to personalise and enhance your experience on our site. Visit our Privacy Policy for more information on our data collection practices or manage your preferences in our Cookie Consent Tool.

https://www.aus.com/press-releases/allied-universal-acquires-g4s-plc-creating-global-integrated-security-services

Joe Hunsinger
7216 CF Hawn Frwy.
Dallas, Texas 75217

10-11-2021

## Re: TCPA – Do Not Call Policy requested

Dear ALLIED UNIVERSAL SECURITY SERVICES LLC.,

You purchased a company called G4S. They called my phone number in violation of the TCPA.

Please send me a copy of **_your_** company's Do Not Call Policy.

Regards,

Joe Hunsinger

CERTIFIED MAIL # 7012 3460 0002 6771 2404

Joe Hunsinger
7216 CF Hawn Frwy.
Dallas, Texas 75217

10-11-2021

## Re: TCPA – Do Not Call Policy requested

Dear G4S SECURE SOLUTIONS, (USA) INC.,

You called my phone number in violation of the TCPA.
Please send me a copy of your company's Do Not Call Policy.

Regards,

Joe Hunsinger

CERTIFIED MAIL # 7012 3460 0002 6771 2398

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☐ Agent ☐ Addressee<br>B. Received by (Printed Name)   C. Date of Delivery |
| 1. Article Addressed to:<br><br>ALLIED UNIVERSAL SECURITY SERVICES LLC.<br>161 WASHINGTON ST. #600<br>CONSHOHOCKEN, PA 19428 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No |
| 9590 9402 5393 9189 0674 91 | 3. Service Type<br>☐ Adult Signature<br>☐ Adult Signature Restricted Delivery<br>☐ Certified Mail®<br>☐ Certified Mail Restricted Delivery<br>☐ Collect on Delivery<br>☐ Collect on Delivery Restricted Delivery<br>☐ Insured Mail<br>☐ Insured Mail Restricted Delivery (over $500) | ☐ Priority Mail Express®<br>☐ Registered Mail™<br>☐ Registered Mail Restricted Delivery<br>☐ Return Receipt for Merchandise<br>☐ Signature Confirmation™<br>☐ Signature Confirmation Restricted Delivery |
| 2. 7012 3460 0002 6771 2404 | |

PS Form 3811, July 2015 PSN 7530-02-000-9053        Domestic Return Receipt



**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

Jupiter, FL 33458

| | |
|---|---|
| Postage $ | $3.05 |
| Certified Fee | $0.00 |
| Return Receipt Fee (Endorsement Required) | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | $0.58 |
| Total Postage & Fees $ | |

0217 21
Postmark Here
OCT 1 2 2021
10/12/2021

Sent To
G4S SECURE SOLUTIONS, (USA) INC.
DNC POLICY REQUEST

PS Form 3800, August 2006

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

Conshohocken, PA 19428

| | |
|---|---|
| Postage $ | $3.05 |
| Certified Fee | $0.00 |
| Return Receipt Fee (Endorsement Required) | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | $0.58 |
| Total Postage & Fees $ | $7.38 |

0217 21
Postmark Here
OCT 1 2 2021
10/12/2021

Sent To
Street, Apt. No. or PO Box No.
City, State, ZIP
ALLIED UNIVERSAL
DNC POLICY REQUEST

PS Form 3800, August 2006        See Reverse for Instructions

JS 44  (Rev. 10/20) - TXND (10/20)

# CIVIL COVER SHEET

RECEIVED

JAN 20 2022

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

JOE HUNSINGER

**DEFENDANTS**

ALLIED UNIVERSAL SECURITY SERVICES, LLC, et al.

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**(b)** County of Residence of First Listed Plaintiff   **DALLAS**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

PRO SE

Attorneys *(If Known)*

**3-22CV0134-L**

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                      *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | **LABOR** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | ☒ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | | ☐ 751 Family and Medical Leave Act | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 791 Employee Retirement Income Security Act | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | | |
| | | ☐ 550 Civil Rights | | |
| | | ☐ 555 Prison Condition | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | |

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 465 Other Immigration Actions

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1  Original
Proceeding

☐ 2  Removed from
State Court

☐ 3  Remanded from
Appellate Court

☐ 4  Reinstated or
Reopened

☐ 5  Transferred from
Another District
*(specify)*

☐ 6  Multidistrict
Litigation -
Transfer

☐ 8  Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
USC 227
Brief description of cause:
ILLEGAL TEXT AND FAILURE TO PROVIDE DNC POLICY WHEN REQUESTED

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
1-20-2022

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____